Jennifer Moore
Attorney for Plaintiff
Securities and Exchange Commission
Salt Lake Regional Office
351 South West Temple, Suite 6.100
Salt Lake City, UT 84101-1950
Tel.: (801) 524-5796
Fax: (801) 524-3558
MooreJe@sec.gov


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                                  Plaintiff,<br><br>              v.<br><br>JOSHUA A. YUDELL,<br><br>                                  Defendant,<br><br>and<br><br>OCFB LLC;<br>OXFORD ADVISORS, INC.;<br>OXFORD CAPITAL ADVISORS, LLC;<br>OXFORD CAPITAL ALTERNATIVE<br>INVESTMENTS, INC.; OXFORD<br>CAPITAL FUND, LP; and<br>OXFORD CAPITAL FUND, LLP<br><br>                                  Relief Defendants. | Case No. 1:15-cv-4548 |

## COMPLAINT

Plaintiff, Securities and Exchange Commission (the "Commission"), alleges as follows:

**SUMMARY OF THE ACTION**

1.      This matter involves unlawful use of the mails or other means or instrumentalities of interstate commerce by Defendant Joshua A. Yudell, acting through various "doing business as" entities he controlled, to effect transactions in or induce or attempt to induce the purchase or sale of securities while neither Yudell nor any of the entities he controlled were registered with the Commission as a broker or dealer or while Yudell was not associated with an entity registered with the Commission as a broker or dealer.

2.      Yudell is believed to be the sole individual controlling OCFB LLC; Oxford Advisors, Inc.; Oxford Capital Advisors, LLC; Oxford Capital Alternative Investments, Inc.; Oxford Capital Fund, LP; and Oxford Capital Fund, LLP, each of which appears to have some connection with the activities of Yudell that are the subject of this complaint.

3.      Beginning at least as early as April 2010 and continuing through at least May 2014, Yudell, via various of the entities he controlled, entered into agreements with securities owners pursuant to which he would obtain custody and control over their securities, attempt to sell the securities into the market, and then provide the net proceeds–minus Yudell's fees–to the securities owners.

4.      Through these activities, Yudell is believed to have obtained, directly or indirectly, at least $4,176,610.22 in ill-gotten gains, some of which may be in the possession of various of the entities Yudell is believed to control.

5.      By engaging in the conduct alleged in this Complaint, Yudell violated, directly or indirectly, and, unless restrained and enjoined by this Court, may continue to violate Section 15(a)(1) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78o(a)(1)].

**JURISDICTION AND VENUE**

6.      The Commission brings this action pursuant to Sections 21(d) of the Exchange Act [15 U.S.C. §§ 78u(d)] to enjoin such acts, practices, and courses of business, and to obtain disgorgement, prejudgment interest, civil money penalties, a penny stock bar, and such other and further relief as this Court may deem just and appropriate. The Defendant, directly or indirectly, made use of the mails or any means or instrumentality of interstate commerce in connection with the conduct alleged in this Complaint.

7.      This Court has subject matter jurisdiction over this action pursuant to Sections 21(d) and (e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and (e), and 78aa].

8.      Venue in this District is proper because Defendant Yudell is found, inhabits, and/or transacted business in the Southern District of New York, and because one or more acts or transactions constituting the violation occurred in the Southern District of New York.

**DEFENDANT**

9.      **Joshua Adam Yudell**, age 37, resides in New York, New York. Yudell, through various of the entities he controlled, engaged in the unregistered broker-dealer activity alleged in this Complaint. Yudell is believed to be the sole individual owning and controlling each of the relief defendants identified below.

**RELIEF DEFENDANTS**

10.      **OCFB LLC** was a Maryland limited liability company formed on July 31, 2012. Although OCFB LLC appears initially to have maintained its principal place of business in Baltimore, Maryland, it is believed to have later been operated by Yudell from New York, New York.

11.     **Oxford Advisors, Inc.**, was a Maryland corporation formed on May 11, 2006. Although Oxford Advisors, Inc., appears initially to have maintained its principal place of business in Annapolis, Maryland, it is believed to have later been operated by Yudell from New York, New York. Oxford Advisors, Inc., whose resident agent was Yudell, is/was the sole general partner of Oxford Capital Fund, LP.

12.     **Oxford Capital Advisors, LLC**, was a Maryland limited liability company formed on April 25, 2011. Although Oxford Capital Advisors, LLC, appears initially to have maintained its principal place of business in Baltimore, Maryland, it is believed to have later been operated by Yudell from New York, New York.

13.     **Oxford Capital Alternative Investments, Inc.**, is a Maryland corporation formed on July 1, 2013. Although Oxford Capital Alternative Investments, Inc., appears initially to have maintained its principal place of business in Baltimore, Maryland, it is believed to have later been operated by Yudell from New York, New York.

14.     **Oxford Capital Fund, LP**, was a Maryland limited partnership formed on May 11, 2006. Although Oxford Capital Fund, LP, appears initially to have maintained its principal place of business in Annapolis, Maryland, it is believed to have later been operated by Yudell from New York, New York. According to its website, Oxford Capital Fund, LP claims to provide private investment banking services and liquidity solutions to large shareholders of small, publicly traded companies. Oxford Capital Fund, LP's resident agent is/was Yudell, and its sole general partner is/was Oxford Advisors, Inc.

15.     **Oxford Capital Fund, LLP**, was a Maryland limited liability partnership formed on April 22, 2010. Although Oxford Capital Fund, LLP, appears initially to have maintained its principal place of business in Baltimore, Maryland, it is believed to have later been operated by

Yudell from New York, New York. It appears that Yudell formed Oxford Capital Fund, LLP, as a successor to Oxford Capital Fund, LP and treated them as one entity (*i.e.*, in spite of the fact that they were legally separate entities).

**FACTS**

**A.      Yudell, via Various of His Entities, Functioned as a Broker and/or Dealer Without Being Registered with the Commission.**

16.      Beginning at least as early as April 2010 and continuing through at least May 2014, Yudell, via various of the entities that he controlled, entered into numerous "Share Purchase Agreements" ("SPAs") as part of a service that he at some point came to market as a "Private Shareholder Secondary Offering" ("PSSO").

17.      Based on a review of several of the SPAs and information describing the PSSO service as appeared on a publicly available website believed to be associated with Yudell, Yudell appears to have operated his business activities in the following manner:

a.   Yudell's customers (*i.e.*, owners of securities, usually microcap common stocks), after negotiating the terms of their specific SPA, would cause the applicable transfer agent to reregister their securities subject to the SPA in the name of a specific Yudell entity, and then have those securities delivered to Yudell.

b.   Yudell, on behalf of the applicable Yudell entity, would accept custody of the securities and then attempt to deposit them into a brokerage account in the name of a Yudell entity established with a Commission-registered broker-dealer.

c.   Yudell, after the securities had been successfully deposited and were credited to the applicable brokerage account, would attempt to sell the

securities into the market at or above a "sales floor" (*i.e.*, a limit order) price established in advance by the SPA customer. This floor/limit price remained subject to change at the SPA customer's request.

d.  If and when any of the SPA customer's securities are sold, Yudell would (i) instruct the Commission-registered broker-dealer to wire the net trade proceeds to a Yudell-entity bank account, (ii) issue the SPA customer a Yudell created trade confirmation (*i.e.*, not the trade confirmation(s) issued to the Yudell entity by the Commission-registered broker-dealer), and (iii) wire the net trade proceeds, less Yudell's SPA fee (typically 10-35% of the net proceeds), to the SPA customer's bank account or that of a designee.

e.  If any of the SPA customer's securities remained unsold at the termination of the engagement, Yudell would cause the unsold securities to be reregistered with the transfer agent back into the SPA customer's name and/or otherwise return the securities to the SPA customer.

18.     Through these activities, Yudell, on behalf of various of his entities, entered into at least 88 SPAs, sold into the market the securities of at least 38 different issuers, obtained estimated gross proceeds of at least $25,880,324.35, and obtained estimated profits (*i.e.*, Yudell's fees under the SPAs) of at least $4,176,610.22.

**B.      At Least Some of the Securities Traded in by Yudell were "Penny Stocks" Under the Federal Securities Laws.**

19.     During the course of the alleged conduct, the securities of at least one of the issuers that Yudell, via various of the entities he controlled, traded in qualified as a "penny stock" under the federal securities laws because the securities did not meet any of the exceptions

from the definition of a "penny stock," as defined by Section 3(a)(51) of the Exchange Act [15 U.S.C. § 78c(a)(51)] and Rule 3a51-1 thereunder [17 CFR § 240.3a51-1].

20.     Yudell was a "person participating in an offering of penny stock" because he engaged in activities with a broker and/or dealer for the purpose of trading and/or inducing or attempting to induce the purchase or sale of securities which were penny stocks.

### C.     Yudell Violated the Federal Securities Laws.

21.     Through the conduct described above, Yudell, directly and indirectly through various of the entities he controlled, effected transactions in or induced or attempted to induce the purchase or sale of securities while neither he nor any of his entities were registered with the Commission as a broker or dealer or while he was not associated with an entity registered with the Commission as a broker or dealer.

### CLAIMS FOR RELIEF

### First Claim for Relief
### Violation of Section 15(a)(1) of the Exchange Act
*(Against Defendant Yudell)*

22.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1-21, inclusive, as if they were fully set forth herein.

23.     By engaging in the conduct described above, Defendant Yudell, directly or indirectly through various of his entities, made use of the mails or other means or instrumentalities of interstate commerce to effect transactions in or induce or attempt to induce the purchase or sale of securities while not being registered with the Commission as a broker or dealer or while Yudell was not associated with an entity registered with the Commission as a broker or dealer.

24.     By reason of the foregoing, Defendant Yudell violated and, unless enjoined, will continue to violate, Section 15(a)(1) of the Exchange Act [15 U.S.C. § 78o(a)(1)].

**Second Claim for Relief**
*(Against Relief Defendants OCFB LLC; Oxford Advisors, Inc.; Oxford Capital Advisors, LLC; Oxford Capital Alternative Investments, Inc.; Oxford Capital Fund, LP; and Oxford Capital Fund, LLP)*

25.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1-24, inclusive, as if they were fully set forth herein.

26.     The Relief Defendants each had some connection with the activities of Yudell that are the subject of this complaint.

27.     Through these activities, one or more of the relief defendants may have received ill-gotten funds coming from the fees that Yudell charged SPA clients in connection with his illegal activities.

28.     The Relief Defendants do not have legitimate claims to any of the funds they received through or because of Yudell's illegal activities in connection with the SPA transactions.

29.     By reason of the foregoing, the Relief Defendants should be required to disgorge the proceeds of any fees obtained through the SPAs, irrespective of whether or not the Relief Defendants obtained the SPA fee proceeds directly or indirectly.

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

**I.**

Permanently restraining and enjoining Defendant Yudell from, directly or indirectly, engaging in conduct in violation of Section 15(a)(1) of the Exchange Act [15 U.S.C. §

78o(a)(1)];

## II.

Ordering Defendant Yudell and the Relief Defendants to, jointly and severally, disgorge all ill-gotten gains or unjust enrichment derived from the activities set forth in this Complaint, together with prejudgment interest thereon;

## III.

Ordering Defendant Yudell to pay a civil penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

## IV.

Permanently restraining and enjoining Defendant Yudell from participating in the offering of any penny stock pursuant to Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)]; and

## V.

Granting such other and further relief as this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws and for the protection of investors.

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**

s/Jennifer Moore
By: One of its attorneys
Jennifer Moore (NY Bar No. 3054301)
Attorney for Plaintiff
Securities and Exchange Commission
Salt Lake Regional Office
351 South West Temple, Suite 6.100
Salt Lake City, UT 84101-1950
Tel.: (801) 524-5796
Fax: (801) 524-3558
MooreJe@sec.gov